[Sac. No. 1017.        Department One.—November 20, 1903.]

KATE BORIES, Appellant, v. UNION BUILDING AND LOAN ASSOCIATION, and T. W. O'NEIL and L. HEILBRON, as its Trustees and Receivers, Respondents.

BUILDING AND LOAN ASSOCIATION—ATTACHMENT LIEN—REPORT OF COMMISSIONERS TO ATTORNEY-GENERAL—SUBSEQUENT ACTION.—The property of a building and loan association is subject to attachment by any creditor thereof, at any time prior to the commencement of an action by the attorney-general to enjoin it from doing business; and the lien of an attachment upon its real estate is not affected by a prior report of the commissioners to the attorney-general that the association was doing business in an unsafe manner.

ID.—SUBSEQUENT POSSESSION OF RECEIVERS—EXISTING LIENS NOT AFFECTED.—The subsequent possession of receivers appointed by the court cannot affect the existing lien of the attachment. The appointment of a receiver works no injury to the least right of any one; but the receiver is the hand of the law, which preserves and enforces rights, and never destroys them. The receiver's possession is subject to all valid and existing liens upon the property at the time of his appointment.

APPEAL from an order of the Superior Court of Sacramento County dissolving an attachment. J. W. Hughes, Judge.

The facts are stated in the opinion.

M. S. Wahrhaftig, for Appellant.

A. M. Johnson, and Devlin & Devlin, for Respondents.

HAYNES, C.—Plaintiff appeals from an order dissolving her attachment levied upon real estate of the said association

in her action upon a money demand. The transcript contains a bill of exceptions. There is no controversy as to the material facts relating to the validity of the attachment.

On December 14, 1897, the state board of commissioners of building and loan associations made an investigation of the affairs and condition of the defendant Union Building and Loan Association, a corporation, and on January 24, 1898, reported to the attorney-general that said association was "transacting an unsafe business," and on January 26th, notified the association that it had so reported to the attorney-general. On February 7, 1898, that officer, on behalf of the people, commenced an action against said association, pursuant to the provisions of the act creating said board of commissioners (Stats. 1893, p. 229), and on February 24, 1898, judgment was entered enjoining the said association from the further transaction of business, and appointing a receiver. Upon appeal this court affirmed the judgment, except as to the appointment of the receiver, and as to said appointment the judgment was reversed. (*People* v. *Union Banking Assn.,* 127 Cal. 400.) Afterwards, in an action brought by a member of the association, the defendants O'Neil and Heilbron were appointed trustees and receivers to liquidate the business and affairs of the association, and it was upon their motion that plaintiff's attachment was dissolved.

The action in which said attachment was issued was brought by plaintiff on January 21, 1898, and the attachment was levied January 31, 1898, on real estate of the defendant association. The association had suspended business in December, 1897.

The only grounds upon which respondents rely to sustain the action of the court in dissolving appellant's attachment, have their basis in the examination of the affairs and condition of the association by the state board of commissioners, and their report to the attorney-general thereof, and the action of the court taken upon his complaint under the provisions of said act of 1893, creating said board of commissioners.

Said report of the board of commissioners to the attorney-general is as follows:—

"The Union Building and Loan Association of Sacramento is conducting its business in an unsafe manner, such as to

render its further proceeding hazardous to the public and to those having funds in its custody."

Said examination was made (or commenced) December 14, 1897, but no report was made to the attorney-general until January 24, 1898, and appellant's action was commenced three days before that date, and her attachment was issued and levied seven days before his complaint was filed. But the length of time that elapsed after the levy of the attachment before said action was commenced by the attorney-general is immaterial, since the property of the association remained subject to attachment or execution at least until the commencement of that action. Whether it remained so liable until its sequestration by the appointment of a receiver need not, in this case, be considered. But neither the appointment of a receiver in that case nor the subsequent appointment of respondents Heilbron and O'Neil as receivers affects the lien of appellant acquired before the action was commenced. In *Lanz* v. *Fresno etc. Bank*, 125 Cal. 458, it is said: "In this case it nowhere appears that any proceedings have ever been taken by the bank commissioners and the attorney-general resulting in the judicial declaration contemplated by the Banking Act; and until such action is taken, the bank's legal *status* as to its creditors is not changed. . . . We conclude that in the absence of the judicial declaration contemplated by the Banking Act, the right of action against the bank by creditors stands exactly as though its doors had never been closed and its business was progressing in the usual and ordinary channels."

*Von Roun* v. *Superior Court*, 58 Cal. 358, arose under the Insolvency Act (Stats. 1880, p. 82). In that case it appeared that an order directing the sheriff to take charge, etc., was made on January 4, 1881. Von Roun had brought suit and procured a writ of attachment therein to be levied on certain property by the sheriff, and on the 8th the sheriff was ordered to turn over to the receiver the attached property then in his hands. This court said: "It seems to be the impression of counsel for the applicants for the writ of review that they have a lien acquired by the levy of the writ of attachment on the property seized which will be lost if the property is turned over to the receiver. This is an entire misapprehension of the

law. The appointment of a receiver works no injury to the least right of any one. It would be strange if it did. The receiver is the hand of the law, and the law conserves and enforces rights—never destroys them. His appointment determines no right, and in no way affects the title of any party to the property in litigation'' (citing numerous cases). "If the applicants have any lien the·receiver holds the property subject to such lien as fully as did the sheriff; and if such property is sold by the receiver, whatever lien exists attaches to the proceeds.''

In High on Receivers (sec. 138), it is said: "It is important to observe that the receiver's possession is subject to all valid and existing liens upon the property at the time of his appointment, and does not divest a lien previously obtained in good faith.'''

Respondents rely, however, upon the case of *Crane* v. *Pacific Bank,* 106 Cal. 64, where this court affirmed an order dissolving an attachment levied upon the assets of the bank by Crane, a creditor who was a depositor. That case involved a construction of the Bank Commissioners' Act, which in some of its features is similar to the act creating the board of commissioners of building and loan associations; but the two acts are materially different, not only as to the powers and duties of the respective boards, but as to the character and importance of the corporations to which they relate.

In *People* v. *Superior Court,* 100 Cal. 114, speaking of section 11 of the Bank Commissioners' Act, it was said: "We have no doubt that this section was intended by the legislature to provide for every case involving the winding up of the business of a banking corporation, and that it necessarily supersedes the provisions of the Insolvent Act of 1880, so far as this class of corporations is concerned.'' And again, "The statute is essentially one of bankruptcy in relation to this class of corporations.'' Under said act said bank commissioners are constantly charged with the duties of examination, and of a limited direction during the business life of the bank and the supervision of its liquidation when its life ends in insolvency. The commissioners of building and loan associations have no similar power except that of examination and reporting to the attorney-general.

It is not necessary, however, to enlarge upon the distinctions between the powers and duties of these two boards, since the legislature has given an emphatic expression upon the subject since the case of *Crane* v. *Pacific Bank,* 106 Cal. 64, was decided.

The Bank Commissioners' Act was passed in 1878 (Stats. 1877-1878, p. 740), and was amended March 10, 1887, (Stats. 1887, p. 90,) and the said amended act was in force when *Crane* v. *Pacific Bank,* 106 Cal. 64, was decided. The act creating the board of commissioners of building and loan associations was enacted March 23, 1893, (Stats. 1893, p. 229,) section 9 of which act corresponded in some material respects to section 11 of the Bank Commissioners' Act. The last-named act was, however, again amended March 26, 1895, (Stats. 1895, p. 172,) and section 11 of the amended act contains, among others, the following provision: "The issuance of the injunction hereinabove provided for shall, by operation of law, dissolve any and all attachments levied upon any property of such corporation within one month next preceding the date of notification of the commissioners to the attorney-general, as provided for in this section, and no attachment or execution shall, after the issuance of such injunction, and during the process of liquidation hereinafter provided for, be levied upon any property of said corporation, nor shall any lien be created thereon."

On the same day (March 26, 1895), the act creating said board of commissioners of building and loan associations was also amended, but section 9 of that act was unchanged, nor was there in the act so amended any provision such as that above quoted, nor any prohibition against acquiring liens upon the property of such associations by attachment or otherwise. These amendments, passed by the same legislature, on the same day, and doubtless considered by the same committee, we think conclusively show the legislative intent to leave the property of such associations subject to attachment and other liens acquired prior to the commencement of the action by the attorney-general. The act gives no effect to the examination made by the board of commissioners. The board cannot give any order or direction to the corporation, nor give notice of the condition of the association to creditors, nor is it com-

pulsory upon the attorney-general to bring suit. If respondents' contention is sound, until suit is brought the association may continue its business, borrow money, contract debts, sell its property, though insolvent, while a creditor is denied the right to resort to the writ of attachment to secure payment of his just demands. It is well settled that the property of insolvent private corporations is subject to attachment—a fact distinctly recognized by the amended Bank Commissioners' Act—and we see no ground to distinguish between building and loan associations and other private corporations in this regard in the absence of a statute creating a distinction either by express provisions or by necessary implication.

It follows that the real estate attached by appellant is charged in the hands of the receiver with her attachment lien, and that the order dissolving the attachment should be reversed.

Cooper, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is reversed.

Shaw, J., Angellotti, J., Van Dyke, J.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.