[Civ. No. 7525. First Appellate District, Division One.—May 19, 1932.]

H. D. ROOSEN COMPANY (a Corporation), Appellant, v. PACIFIC RADIO PUBLISHING COMPANY (a Corporation), Respondent.

526

Dinkelspiel & Dinkelspiel for Appellant.

Gerald J. O'Gara, James A. O'Gara and John O'Gara for Respondent.

THE COURT.—This case involves the question of the defendant's liability under its written acceptance of an assignment made for a valuable consideration to plaintiff in the sum of $900, which had not been earned by the assignor at the time of defendant's acceptance; it being contended by defendant that, at about the time of the acceptance, such circumstances arose that nothing was thereafter earned by the assignor, and that the assignment became ineffectual and defendant's acceptance nugatory. Judgment went in favor of the defendant, and from that judgment plaintiff prosecutes this appeal.

There is no real dispute concerning the essential facts.

In connection with its business the defendant published a monthly periodical, which defendant had habitually caused to be printed by H. L. Kriedt, doing business in San Francisco under the trade name of H. L. Kriedt Company. The periodical came out about the 25th of each month, and the printing bill was customarily paid about one month later. By

August 4, 1927, however, full payment had been made for all work previously done by Kriedt. At that time Kriedt was indebted to plaintiff in the sum of $900 for printer's ink previously purchased; and being pressed for payment, Kriedt sent plaintiff an assignment in the following form:

"August 4, 1927.

"H. D. Roosen Co.,
 "340 E. 4th St.,
 "Los Angeles, Calif.
"Gentlemen:

"For value received we hereby assign, sell and transfer to your company the sum of $900.00 for purchases to be paid by Pacific Radio Publishing Company. The above amount covers your account in full. We are advising the Radio Publishing Co. to the same effect.

"Yours very truly,
"H. L. KRIEDT Co.
"By H. L. KRIEDT"

Notice of this assignment was given by Kriedt to the defendant; and that notice, after defendant's acceptance had been appended, was likewise delivered to plaintiff.

As set forth in the court's findings, the notice, with the acceptance, reads as follows:

"August 4, 1927.

"Pacific Radio Publishing Co.,
 "Pacific Bldg.,
 "San Francisco, California.
"Gentlemen:

"Please be advised that we have been obliged to pass an assignment in the amount of $900.00 to the H. D. Roosen Co. of San Francisco and Los Angeles covering supplies furnished this company. You are therefore authorized to pay the H. D. Roosen Co. from our next invoice the sum of $900.00.

"Thanking you for past favors, we are,
"Sincerely yours,
"H. L. KRIEDT Co.
"By H. L. KRIEDT

"Accepted Aug. 8/1927
"By PACIFIC RADIO PUB. Co.
"H. W. DICKOW, Treasurer."

At the time of the acceptance, Mr. Dickow wrote upon the right-hand margin the words "Due and payable September 25th, 1927."

The acceptance was written at the personal solicitation of Kriedt, with whom Dickow was friendly, and who informed Dickow that he was in great need of money, and that without acceptance of the assignment, he would not be able to print the next issue of the periodical. Dickow testified that owing to Kriedt's financial difficulties, the defendant had planned to make arrangements for its work with some other printer, but concluded to let Kriedt print one more issue, as it was too late to arrange with anyone else. So it was agreed verbally that Kriedt should print the August issue, the expense of which would be about $1400, and that settlement would be made on September 25th. It was under these circumstances that Dickow, acting on behalf of the defendant, accepted the assignment on August 8th, and fixed September 25th as the date for payment.

Before the assignment had been made, an action to foreclose a chattel mortgage of Kriedt's equipment had been begun against Kriedt and his wife by the Anglo California Trust Company; and in that action upon application of the trust company, presented on August 8, 1927, the day of the acceptance, an order was forthwith made, with the written consent of Mr. and Mrs. Kriedt, acting by their attorney of record, whereby Kriedt's superintendent, Alex. R. Held, was appointed receiver of the personal property and business, with authority to take possession of the business and assets, collect moneys receivable, and pay such amounts as should be necessary in maintaining the business pending trial of the action. Under this order, the receiver continued the operation of the business, and caused to be printed and delivered to defendant the issue of the periodical in contemplation at the time of defendant's acceptance of the assignment. Instead of reserving for plaintiff $900 of the amount of about $1400 payable for the printing of that issue, the defendant paid the full amount to the receiver, and denied all liability to plaintiff under the assignment which defendant had accepted. The receiver, having collected the full amount charged, is not here with any claim; and the issue is wholly between the plaintiff, as payee

under the accepted assignment, and the defendant, who, by virtue of its acceptance, is held accountable by plaintiff as its debtor substituted in place of Kriedt.

The trial court found in substance that the assignment had been made to plaintiff and that on August 8, 1927, defendant had appended thereto its acceptance, and that on that day the receiver was appointed. The court then found that at the time of the assignment and the acceptance, the defendant was not indebted to Kriedt, and that the assignment was of no effect, and was null and void; that thereafter Kriedt, acting through the receiver, did business with the defendant, which produced moneys in excess of $900, but that by reason of the appointment of the receiver on August 8th "H. L. Kriedt or H. L. Kriedt Company did not on that date or thereafter have any power, ability or authority to make or execute any assignment on its behalf to plaintiff herein, to assign any indebtedness due or to become due said H. L. Kriedt or H. L. Kriedt Company from defendant, to plaintiff".

 The acceptance and the order appointing the receiver were signed on the same day, but there was nothing in the record to show the precise time of either act. If the receiver was appointed and qualified before the acceptance, the burden to prove the fact rested on the defendant, who claimed to be absolved by reason of that appointment. In the absence of proof to the contrary, the presumption is in favor of the fairness and regularity of the transaction effected between Kriedt and the defendant. (Sec. 1963, subd. 19, Code Civ. Proc.) Furthermore, the order appointing the receiver restrained Kriedt from interfering with the business in any manner, and it is presumed that in his dealings on the day in question he was innocent of wrong, and that he obeyed the law. (Sec. 1963, subds. 1 and 33, Code Civ. Proc.)

There is in the briefs considerable discussion of points which are foreign to the decisive question in the case. Except for the intervention of the receiver, there would be nothing arguable. The evidence shows without conflict that defendant agreed with Kriedt that he should print defendant's August issue. Upon that agreement the defendant accepted the assignment or order in favor of plaintiff, and promised to make payment of $900 to plaintiff on September

25th out of the fruits of the printing to be done. The assignment, thus accepted, constituted non-negotiable business paper with consideration in its support.

■ Acceptance of a draft or order, whether negotiable or not, by one from whom moneys are to become payable, is not a collateral, but an original, direct and immediate contract between the acceptor and the payee, for which consideration may be furnished *aliunde*. (*Raborg* v. *Peyton*, 15 U. S. (2 Wheat.) 385 [4 L. Ed. 268].)

Such contract constitutes a novation between the parties, and is subject to the rules applicable to contracts in general. (*Bank of Yolo* v. *Bank of Woodland*, 3 Cal. App. 561, 567 [86 Pac. 820]; *Sprague C. M. Co.* v. *Western Ranching Corp.*, 29 Cal. App. 374, 378 [155 Pac. 1017].)

■ While on August 4th, the day of the assignment itself, there was no express agreement that Kriedt was to print the August issue for defendant, yet he had been doing defendant's work for a long time; and Dickow's testimony shows that defendant did not intend to make a change before that issue appeared. In furtherance of the purposes of both parties, an express contract for the printing was made verbally at the time of the acceptance on August 8th, whereby defendant undertook to pay plaintiff $900 out of the compensation to accrue. The fund was unquestionably existent potentially at the time of the acceptance; and in view of the past relations of the parties and the testimony of Dickow as to contemplated continuance of the relationship, the assignment, when made on August 4th, had for its support not merely a supposititious expectancy, but a potentiality sufficient to validate an equitable transfer. (*Walker* v. *Rich*, 79 Cal. App. 139, 144 [249 Pac. 56].) ■ And a partial assignment of money to become due will have the powers of equity exerted in its behalf as fully as enforcement will be accorded in favor of a total assignment in a court of law.

In *Bank of Harlem* v. *Bayonne*, 48 N. J. Eq. 246, 252 [21 Atl. 478, 480], the rights created in equity by an assignment are defined as follows:

"While, properly speaking, an assignment cannot be made of a subject which does not exist, such as a fund to become due on the future performance of a subsisting contract, yet equity, on the possible debt ripening into an enforceable

specific money liability, treats the agreement as an assignment *pro tanto* of the fund, and, by force thereof, vests the equitable title to the money in the assignee. . . .

"To impound the amount in the hands of the debtor, notice of the assignment must be given to him, but no particular form of notice is required; any writing or act which clearly indicates that the assignor intends to make over the fund belonging to him amounts in equity to an assignment of the fund. . . . On notice being given to the debtor, and the sums being earned under the contract, the debtor becomes trustee or *quasi* trustee for the assignee as to the amount assigned, subject to existing equities and valid prior charges thereon. . . . From this it follows that neither payment to nor a release or discharge by the assignor, after notice of the assignment, can affect the rights of the assignee against the debtor. . . .

"It is evident from this statement of the incidents of an equitable assignment that acceptance by the debtor of the order or assignment is not, in equity, necessary to its validity as a transfer *pro tanto* of a fund in his hands. It takes effect from the acts of the assignor and assignee, and the debtor, so far as the right to the fund is concerned, is but the instrument through whom the transfer is to be actually made. The debtor's acceptance or promise gives the assignee an action at law against him, not on the assignment, but on the promise; in equity, it neither creates, increases nor diminishes his liability to the assignee. (3 Pom. Eq. Jur., sec. 1280, and note 1.)"

The contract expressly made between the defendant and Kriedt on August 8th sufficed to give equitable vitality then at any rate to the assignment, whatever its previous status had been; and when, after making a definite contract with Kriedt, the defendant accepted the assignment and fixed September 25th for payment, defendant assumed by that promise a direct and original obligation to the assignee cognizable in an action at law.

In its salient features the case closely resembles *Barlow* v. *Lande*, 26 Cal. App. 424 [147 Pac. 231, 232]. There, an attorney, who was representing the executor in matters pertaining to the estate of Julius Friedman, gave an order on the executor in a certain amount payable "out of the next fees allowed by order of court"; and this order was accepted

in writing by the executor. Thereafter a sum in excess of the amount specified was allowed by the court for services rendered the executor, whereupon the executor, ignoring his acceptance, paid to the attorney the amount so allowed for services, with the result that the executor was himself held answerable to the aggrieved payee named in the order. In the trial the court excluded proffered evidence of want of consideration and of cancellation of the order after the acceptance. In relation to these matters the appellate court said:

"It is the rule of law in this state that the drawing and delivery of a nonnegotiable order for the payment of a part of a debt operates as an equitable assignment *pro tanto* as between the assignee and payee, although such an assignment in and of itself does not, as between the drawee and payee, obligate the former to recognize the assignment and pay the sum called for therein. Being only for a portion of a debt, the drawee may insist upon his right to discharge the debt *in toto,* and by a single payment. But by accepting the assignment, even though it be for only a part of the debt, the debtor admits the original debt, and to the extent of the sum called for in the assignment becomes the debtor of the assignee, and assumes the obligation to pay only him. In such a case the original indebtedness of the drawee will be deemed a sufficient consideration for the drawee's acceptance of the assignment and consequent liability to the assignee thereof. It is no defense to an action by the assignee of a debt that there was no consideration for the assignment. Owing the debt it is immaterial to the debtor to whom he pays it, provided he be protected against the demand of the original creditor for the payment of the same debt.. This the assignment and its acceptance would fully do. Consequently the purpose and consideration of the assignment in the present case were no concern of the defendant. And an assignment of a debt which has been accepted cannot be rescinded or annulled at the mere option of the assignor."

If Kriedt had continued in charge of his business until the August issue of the periodical had been printed, defendant could not have defended an action based upon its acceptance. A receiver was, however, appointed, and the August issue was printed under the administration of the receiver.

As was conceded at the close of the trial by the attorney then representing the defendant, the sole question now is whether the contract made with Kriedt was abrogated when the receiver took charge.

A receiver is an officer of the court, administering his stewardship in an official capacity. As a custodian subject to the orders of the court, he becomes clothed with the title of the debtor, and takes the property *cum onere,* in the plight and condition existing at the time of his appointment, subject to all liens and equities, including the right of set-off, and impressed with the legal and equitable rights and claims of creditors. (22 Cal. Jur. 437; *Kennison* v. *Kanzler,* 4 Fed. (2d) 315; *Wright* v. *Seaboard S. & M. Corp.,* 272 Fed. 807; *In re Farmers' & Merchants' Bank,* 194 Mich. 200, 207 [160 N. W. 601]; *Irwin's Bank* v. *Fletcher S. & T. Co.,* 195 Ind. 669 [145 N. E. 869, 146 N. E. 909].)

The receiver does not occupy the status of an assignee. His function is that of a minister of the court in possession of the property, to the end of conserving the rights of everybody having any interest; and no lien or contract is disturbed or altered by the court's intervention. (*Bories* v. *Union B. & L. Assn.,* 141 Cal. 74, 77 [74 Pac. 552]; *Meili* v. *Crane,* 102 Cal. App. 144, 147 [282 Pac. 960]; *Highland Securities Co.* v. *Superior Court,* 119 Cal. App. 107 [6 Pac. (2d) 116].)

The mere fact of possession does not, however, obligate the receiver to carry out executory contracts of the debtor; and, subject to the order of the court, he may have a reasonable time after his appointment to elect whether to adopt any such contract or reject it. (53 C. J. 149–152.) Adoption may be signified either by express agreement or by implication (*Crawford* v. *Gordon,* 88 Wash. 553, 557 [L. R. A. 1916C, 516, 153 Pac. 363]), and if, without declaring himself, he undertakes performance, he assumes the obligations of the contract and adopts it subject to its burdens and to any right of offset. (*Odell* v. *Bedford Co.,* 224 Fed. 996, 997; *In re Farmers' & Merchants' Bank, supra.*)

In this case, there is no evidence at all of any repudiation by the receiver of Kriedt's contract for the August issue; nor is there anything to indicate any new or independent contract between the receiver and the

defendant. Apparently, neither party sought the advice nor direction of the court; and the printing of the issue proceeded just as if Kriedt were still in control of the business. The court did not find that there had been repudiation or cancellation by the receiver, and there is no evidence which would permit any inference of abrogation to be drawn from the findings made. (*Rossini* v. *St. Paul F. & M. I. Co.*, 182 Cal. 415, 421 [188 Pac. 564] ; *Robb* v. *Cardoza*, 110 Cal. App. 116, 120 [293 Pac. 851].)

Election to carry out the contract was not so much a matter of law as a matter of judgment. The receiver selected by the parties with the approval of the court is presumed to have had good sense and to have used reasonable intelligence in performing his duties. When he elected to proceed with the work, he did so, just as Kriedt would have done, subject to the rights of plaintiff under Kriedt's assignment and subject to defendant's right of set-off by virtue of its acceptance of the assignment. If, notwithstanding its acceptance and without seeking the advice of the court, defendant was so imprudent as to pay the entire contract price to the receiver instead of reserving $900 for plaintiff, neither that payment nor any acquittance from the receiver can be translated into a release of the defendant from its absolute liability to the plaintiff evidenced by its acceptance. After adopting the contract, the receiver stood in the shoes of Kriedt; and defendant could no more relieve itself of its positive obligation to plaintiff by settlement of its accounts with the receiver than by a settlement with Kriedt himself in derogation of the accepted assignment. (*McCloskey* v. *San Francisco*, 66 Cal. 104 [4 Pac. 1092] ; *McCarthy* v. *Mt. Tecarte L. & W. Co.*, 110 Cal. 687, 691 [43 Pac. 391].)

 In defendant's brief considerable space is devoted to argument in support of a contention that in making the assignment and procuring its acceptance, Kriedt perpetrated a fraud both on the defendant and on his creditors. In the answer to the complaint there is an averment that Kriedt "fraudulently attempted to assign to plaintiff herein the sum of $900.00 to become due from defendant herein to H. L. Kriedt Company", but the epithet is left bare of precise specification. Neither was any charge of fraud

pressed at the trial, nor is there anything on the subject in the findings.

The assignment was for a valuable consideration, and Kriedt had a right to give a preference to the plaintiff. Even if Kriedt was insolvent, his assignment was not fraudulent; and in the absence of bankruptcy proceedings was not vulnerable. (*Joint Pole Assn.* v. *Steele,* 213 Cal. 233 [2 Pac. (2d) 335].) Moreover, defendant, not being a creditor, cannot assume to impute invalidity to the transfer. (*Frink* v. *Roe,* 70 Cal. 296, 308 [11 Pac. 820]; *Darrah* v. *Lang,* 119 Cal. App. 552 [6 Pac. (2d) 989].)

It is argued, however, that there was a fraud practiced on defendant in procuring its acceptance of the assignment by reason of representations of Kriedt that he was in such need of money that, in Dickow's language, "If I didn't do it that day, he was dead broke the next day; he was so badly involved that he had to have $900 that day." And Dickow said further that from the statements made he believed that the acceptance would result in enabling Kriedt to keep in business so as to print defendant's next issue. Kriedt was evidently not concealing his precarious situation; and though the business went into the hands of a receiver, the contract made with Kriedt was not repudiated. The work in contemplation was done as agreed; but unfortunately defendant did not keep its promise to plaintiff. Of that breach this litigation is the sequel.

The judgment is reversed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 18, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 18, 1932.

Langdon, J., dissented.