[Civ. No. 6061.   Third Appellate District.—July 12, 1939.]

ROY S. GARRIS et al., Appellants, v. SAMUEL L. CAR-
PENTER, Jr., Insurance Commissioner, etc., et al., Re-
spondents.

V. P. Lucas and Henry G. Bodkin for Appellants.

Earl Warren, Attorney-General, John L. Flynn and E. P. Fay, Deputies Attorney-General, Syril S. Tipton and W. H. Abrams for Respondents.

MONCUR, J., *pro tem.*—This action has heretofore been before this court on appeal by plaintiffs, appellants herein, from a ruling by the trial court sustaining demurrers to their complaint without leave to amend. (*Garris* v. *Mitchell,* 7 Cal. App. (2d) 430 [46 Pac. (2d) 225].) A statement of the contentions of appellants constituting their cause of action as set forth in said decision is referred to for the purpose of this opinion.

E. Forrest Mitchell was Insurance Commissioner of the State of California at the time of the commencement of this action and was succeeded in that office by respondent Samuel L. Carpenter, Jr. After the *remittitur* came down on the former appeal, appellants, by a second amended and supplemental complaint, substituted said Samuel L. Carpenter, Jr., in the place and stead of said E. Forrest Mitchell as such Insurance Commissioner and as one of the defendants in this action. The second amended and supplemental complaint was filed, of course, for the purpose of making the substitution made necessary by the change of the individuals holding the said office and to allege a demand upon said Samuel L. Carpenter, Jr., as such Commissioner, to take suitable action to recover the sums alleged to have been paid and of his refusal and neglect to take the demanded action, and that by reason of such failure and refusal that he be removed as receiver and some other person be appointed.

For the sake of brevity, E. Forrest Mitchell and Samuel L. Carpenter, Jr., will be referred to as the Commissioner; Union Automobile & Casualty Company will be referred to as the Union Company; International Re-Insurance Corporation will be referred to as the International Company; Associated Fire & Marine Insurance Company will be referred to as the Associated Company; and the Independence Indemnity Corporation will be referred to as the Independence Company. Mr. H. A. Benjamin was the special deputy commissioner in charge of the liquidation of the Union Company's assets

throughout the proceedings and will be referred to as the liquidator.

The Commissioner and the Associated Company filed answers denying the fraudulent character of the transaction set forth in the amended complaint. The Commissioner's answer also denied the indebtedness owing by the Union Company to the Associated Company, to the International Company and to the Independence Company. The action came on regularly for trial and it was stipulated at the trial that the answer of the Associated Company would stand and be deemed as the answer for each of the other respondent companies. The appellants introduced evidence before the court and after resting their case respondents introduced no evidence. Prior to the trial of the action the International Company and the Independence Company had become insolvent and had been taken over by the Commissioner and their affairs were in process of liquidation by the Commissioner at the time of the trial of the action. When appellants' evidence was concluded the Associated Company moved for a nonsuit upon the ground that there was no evidence establishing fraud or conspiracy and that under the evidence there was no preference shown and there was no showing or inference upon which fraud could be predicated. The Commissioner on behalf of the International Company and the Independence Company moved for judgment upon practically the same grounds as the motion for nonsuit on the part of the Associated Company was made. A motion was also made on behalf of the Commissioner as receiver for the Union Company for nonsuit upon practically the same grounds as the motion for nonsuit upon the part of the Associated Company was made. The court granted the motions and pursuant to the order of the court, findings of fact and conclusions of law were made and thereupon judgment was entered against appellants and in favor of the Commissioner as liquidator of the International and Independence Companies, dismissing the said action. Also judgments following the motions for nonsuit were entered, dismissing the action as to defendant Associated Company and the Insurance Commissioner as *ex-officio* receiver and liquidator of the Union Company. This appeal is now before this court upon these judgments.

At the time the Commissioner took over the Union Company said company carried reinsurance treaties with the In-

ternational Company, Associated Company, and Independence Company. These latter reinsurance carriers, following the appointment of the Commissioner as receiver of the said Union Company, notified the Commissioner of their intention to cancel the reinsurance treaties. Thereupon the respondent Commissioner made a survey and estimates of the assets and liabilities of the Union Company and, in the exercise of his judgment, determined on the course of reinsurance of the outstanding policies.

In the order of the court authorizing the Commissioner to take charge of the Union Company he was directed to conserve its assets for the benefit of its policyholders, its creditors, and the general public. The Commissioner filed a petition requesting authorization from the court to enter into reinsurance contracts with the Associated, Independence and International Companies. In this petition it is stated that from a summary examination and audit of the books of the Union Company it appeared that a considerable portion of the insurance policies issued by said Union Company were reinsured in other insurance companies; that under said reinsurance treaties the Union Company was indebted to said reinsurance companies in the sum of $147,091.18; that respondent corporation carried on its own books insurance policies covering property damage and collision on which there was a gross unearned premium of about $61,364; that should the Commissioner cancel all reinsurance treaties and return to the policyholders the unearned premiums, the resultant dividend ratio distributable to all claimants would be approximately fifty-five to one hundred of the amount of the claim; that in order to render the insurance service called for under the policies theretofore issued to a great number of policyholders throughout the State of California it was proposed that the Commissioner and the reinsurance companies enter into an agreement whereby the reinsuring companies would discount their claims for the amounts due under reinsurance treaties by ten per cent, and accept payment of said discounted balances in deferred payments of such amounts as would be within the income of said respondent company. Attached to the petition as exhibits A, B and C were copies of the agreements which the Commissioner proposed to enter into with the International Company to which the Union Company was then indebted in the sum of $98,481.74, with the Associated

Company to which the Union Company was then indebted in the sum of $36,543:96, and with the Independence Company to which the Union Company was then indebted in the sum of $12,065.48; that the authorization of the Commissioner, as liquidator, to enter into the agreements and reinsuring treaties mentioned would result in the numerous policyholders throughout the State of California receiving one hundred per cent insurance service under their policies and the distribution of a dividend ratio of about 54.5 to 100 to the general claimants; and that said results would not materially affect the general claimants and would be of great benefit to the large number of policyholders throughout the State of California, and in keeping with public policy.

The court granted the petition and authorized the entering into of the proposed reinsurance treaties. The appellants herein were general creditors of the Union Company, and it is their contention that the Associated, International, and Independence Companies were also general creditors and that by the making of the payments under these reinsurance treaties there was a preferment as against the appellants and the other general creditors of the Union Company, and that thereby a constructive fraud as to them resulted.

On the former appeal in this case (*Garris* v. *E. Forrest Mitchell et al., supra*), the appellate court held that the complaint in the action stated a cause of action for fraud and contained a prayer for general and other relief to which plaintiffs would be entitled should they sustain the allegations of the complaint. On the trial of the action, appellants introduced in evidence a petition seeking authorization from the court to enter into the reinsurance contracts and called as a witness Mr. H. A. Benjamin, in charge of the liquidation proceedings, under section 2055 of the Code of Civil Procedure. From the testimony of the liquidator it appeared that the premiums on reinsurance contracts such as the ones here involved are payable in advance, and that the amounts stated in the petition as being due from the Union Company to the reinsurance companies are the amounts which would have been owing had the policies been continued in force according to their terms; that the Union Company had not made any payments in advance but had made payments from time to time as premiums were earned; that at the time when the Commissioner took over the Union Company for liquidation there

were overpayments on account of reinsurance treaties to the Associated and International. He did not testify as to whether there were any overpayments to or any balances due the Independence Company for earned premiums, and the record is silent concerning this particular fact. It may be assumed therefore that had there been any earned premiums due to the Independence Company it would have been shown by the evidence.

In connection with the statements of indebtedness from the Union Company to the reinsurance companies, he testified that these were amounts which would have been owing only in the event that the reinsurance treaties were continued in force according to their terms and for the time specified in the treaties. He further testified that he had gone over the assets that came into the hands of the liquidator and made estimates of the values of those assets as complete as was possible in the time available and for the actual determination of the issues involved in many of the claims; that he believed from his appraisement of the assets of the Union Company that he could ultimately pay 54.5 per cent to the general creditors at the time he presented the petition to the court and that the result would not materially affect the general claimants and would be of more benefit to a large number of policyholders throughout the State of California.

The old reinsurance treaties were cancelled and new insurance treaties were entered into by the Commissioner with the reinsurance companies. It is contended by respondents that by reason of the fact that the payments which were concededly made by the Commissioner under the new reinsurance treaties secured by him, such payments were not made to said reinsurance companies as general creditors of the Union Company. We are of the opinion that the reinsurance companies, under the new reinsurance treaties, were not general creditors of the Union Company, but even if it be conceded that they were such general creditors, it does not follow that as to appellants and the other general creditors, any preferment was made as to them or any detriment suffered by them of which they could complain or which, under all of the circumstances disclosed by the evidence, either actual or constructive fraud as to them resulted.

It was the duty of the Commissioner as receiver and liquidator to administer the affairs of the Union Company for the

benefit of not only the general creditors but also of the policy-holders and the public generally. In the case of *H. D. Roosen Co.* v. *Pacific Radio Pub. Co.*, 123 Cal. App. 525, 534 [11 Pac. (2d) 873], in speaking of the duties of a commissioner in a like case it is said:

"His function is that of a minister of the court in possession of the property, to the end of conserving the rights of everybody having any interest."

Under the authority vested in him, the Commissioner made a survey of the valuation of the assets in order to determine whether he could effect a substantial and ratable distribution to creditors, and having arrived at the conclusion that this could be done and that he could also purchase reinsurance for the outstanding policies without material detriment to other parties interested, he proceeded accordingly. Under such a situation what was said by the court in the case of *Daniel* v. *Layton*, 75 Fed. (2d) 135, seems applicable here:

"Moreover, appellants are not concerned with the terms of the reinsuring contract. It does not affect or concern them. They should not be permitted to defeat the well-matured plans of the receiver merely because the reinsurance contract may be a highly desirable one from the policyholders' viewpoint. They are interested merely in the allowance and payment of their claims. If they receive their proportionate share of the assets they cannot be heard to complain of the highly favorable contract of reinsurance which benefits the policyholders.

"Nor do we see merit in appellants' contention that they are entitled to have the property sold and the affairs of the company liquidated, even though they frustrate the plan of reinsurance and defeat the rights of the policyholders whose claims are perhaps fifty times as great as appellants'. The case of *Coriell* v. *Morris White, Inc.*, (C. C. A.) 54 Fed. (2d) 255, is authority for the course pursued here. Even in the absence of precedent we think such a plan must meet with judicial approval. The contentions of one creditor must be considered in the light of their effect on other creditors. This, we think, is particularly true in insurance company reorganizations or where the insurance of an insolvent insurance company is reinsured in another company. All that any creditor may legitimately ask is fairness in the distribution of assets. In determining fairness the court may, in cases like the in-

stant one, accept appraisal values instead of resorting to liquidation through sales, etc.''

The Commissioner as liquidator of the insolvent insurance company is a state officer, performing duties enjoined upon him by the state, and in their performance he acts in behalf of the state. (*Mitchell* v. *Taylor*, 3 Cal. (2d) 217, 219 [43 Pac. (2d) 803].) The laws of this state vest in the Commissioner wide powers for the purpose of enabling him to perform the duties required of him. Undoubtedly such laws were enacted for a purpose connected with the public interest, and the legislature has declared that the liquidation of insurance companies is a matter in which the state has an interest. In the absence of the completion of the liquidation proceedings and a final accounting, there is nothing in the record to show that the general creditors were injured by the action of the liquidator in effecting reinsurance or that his estimates were erroneous. In the case of *Ballerino* v. *Mason*, 83 Cal. 447, 450 [23 Pac. 530], quoting from the case of *Kendall* v. *Stokes*, 3 How. 87, 98 [11 L. Ed. 506], it is said:

'' 'A public officer is not liable to an action if he falls into error in a case where the act to be done is not merely a ministerial one, but is one in relation to which it is his duty to exercise judgment and discretion, even though an individual may suffer by his mistake.' ''

Undoubtedly the Commissioner is a ministerial officer and is called upon to exercise very broad judgment and discretion in the performance of his duties. What he did in the matter is to be judged from the facts and circumstances existing at the time he filed the petition and upon which the order authorizing reinsurance treaties was issued.

It appears from the evidence that the liquidator, when the reinsurance companies notified the Commissioner of their determination to cancel the reinsurance treaties in force at the time the Commissioner took charge of the Union Company entered into negotiations with representatives of the Associated, International and Independence Companies for the purpose of ascertaining if new insurance treaties could be negotiated and if there was any fraud or conspiracy on the part of the reinsurance companies, it could only be inferred from the fact that there were such negotiations. Generally, fraud is not presumed, and in this case the burden rested upon appellants to show the existence of fraud or of the conspiracy

by at least satisfactory evidence. Appellants fell far short of succeeding in presenting such proof.

It is the claim of the appellants that the trial court committed error in sustaining objections to a number of questions which were propounded to Mr. Benjamin by their counsel while he was testifying in the case and by reason of which prejudice resulted. We have carefully examined the entire record in regard to this contention. A statement of the various questions and answers to which objections were made and sustained is not considered necessary. In a number of instances the questions asked called for a conclusion of the witness in regard to ultimate facts in the case and the rulings thereon were therefore proper. As to practically all of the other alleged errors, the information sought was testified to fully by the witness in response to other questions propounded by counsel for appellants. As to any other rulings which could not be included under the foregoing class of questions, if any, if answers had been obtained to such questions they could not possibly have affected the ultimate determination of the case one way or the other. In either event, if it be conceded that the trial court erred in any of its rulings rejecting proffered evidence, prejudice did not thereby result.

The complaint is also made by appellants that no notice of the hearing on the petition for entering into the new reinsurance treaties was given to appellants or any of the other general creditors. There is no statutory requirement for such notice. Therefore, it rested in the discretion of the receiver and the court as to whether notice should be given. As notice of the hearing was not required either by statute or by the court this objection is not tenable.

It now remains to be determined whether there was such a conflict in the evidence as would preclude the trial court from granting the motions for nonsuit. It is the contention of appellants that the introduction in evidence of the petition wherein the various items of indebtedness are set forth, taken in connection with the testimony of Mr. Benjamin in respect to these matters of claimed indebtedness, created such a conflict that motions for nonsuit would not lie. Much of the difficulty in connection with the consideration of this claimed conflict arises in connection with the use and meaning of the words "indebted" and 'indebtedness". The meaning of the words "indebted" and "indebtedness" must be de-

termined from the general context of the petitions themselves, the use of these words in connection with insurance and re-insurance matters and treaties and the general purpose of the presenting of the petition and the obtaining of the order sought pursuant thereto. So, considering the petition and construing it in connection with the testimony of Mr. Benjamin, it cannot be said that there is any conflict whatever in the evidence. Therefore, under the evidence it appears, without substantial conflict, that there was no misstatement in the petition pursuant to which the order was made authorizing the reinsurance treaties which were entered into by the Commissioner; that the Commissioner and the liquidator believed that it was proper and for the best interests of all parties interested that the new reinsurance treaties should be effected; that the examiner and liquidator acted in entire good faith in the proceedings and properly exercised the judgment and discretion vested in them; also that no bad faith, fraud, or acts from which a conspiracy could be inferred are shown on the part of the reinsurance companies.

We are satisfied that judgment pursuant to the findings of fact and conclusions of law and the judgments following the orders granting the motions for nonsuit are correct, and they are and each of them is affirmed.

Pullen, P. J., and Tuttle, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 5, 1939.