[Civ. No. 16660. Second Dist., Div. One. May 25, 1949.]

RICHARD W. LOVELAND, Appellant, v. FRED PETERS et al., Respondents.

Robert L. Moore for Appellant.

George Bouchard for Respondents.

DORAN, J.—The appellant's amended complaint seeks recovery based upon an alleged assignment to appellant by one Robert L. Neville, doing business as Neville Industries, of all moneys to come due by virtue of a purchase order under which the respondent Peters, doing business as Peters Metal Products Company, ordered certain aluminum castings from Neville. In the language of appellant's brief, recovery is sought first, "upon the assignment effectuated orally, by manual delivery of the purchase order and by written instrument and, secondly, upon respondents' written agreement creating a new contract under which respondents became directly liable to pay appellants all moneys due under the purchase order, rather than to Neville."

The record discloses that appellant Loveland, a practicing attorney, became acquainted with Robert L. Neville in September or October, 1945; that Neville consulted Loveland professionally, and on November 25, 1945, the two entered into a five-year contract under which Loveland was to act as a business consultant. Under this contract Attorney Loveland was to receive $7\frac{1}{2}$ per cent of the gross sales of Neville's business with a minimum of $215 per month for a maximum of 10 hours work per month as such business consultant. In November and December of 1945 and January, 1946, appellant Loveland loaned to Neville a total sum of $2,300, this money being advanced by Mrs. Loveland.

The trial court found that "On or About February 11, 1946, under a Purchase Order designated as No. 1117, the defendants (Peters) ordered from said Robert L. Neville 5,000 5-piece 'Mother's Helper's Sets', aluminum castings; that said Neville advised plaintiff (Loveland) that he needed to borrow an additional $500.00, and plaintiff advised Neville he would personally loan him $500.00 if he, Neville, would give plaintiff an assignment upon the monies to become due under said Purchase Order No. 1117 as security . . . ; that Neville agreed to give such assignment and plaintiff prepared the same, requesting Neville to have defendant Peters, sign it."

The assignment here in question reads as follows:

"ASSIGNMENT OF MONEY TO BECOME DUE UNDER CONTRACT

"Know all men by these presents, that I, Robert L. Neville, Los Angeles, California, in the county of Los Angeles, State of California, in consideration of the sum of Five Hundred Dollars ($500.00), and other good and valuable consideration, receipt of which, is hereby acknowledge, assign, transfer and

set over to Richard W. Loveland, of Beverly Hills, county of Los Angeles, State of California, All of my right, title and interest in and to all moneys due and/or to become due by virtue of Purchase Order No. 1117 executed by the Peters Metal Products Company, dated February 11, 1946 and accepted hereby by me, and I do hereby give the assignee, his executors, administrators, and assigns, full power to collect and receive the same, and to prosecute any suit or proceedings at law or in equity therefor.

"In witness whereof, have set my hand hereto, this 14th day of February, 1946.

Robert L. Neville

"The Peters Metal Products Company hereby accepts receipt of the above Notice of Assignment, consents to said assignment, and agrees to pay Richard W. Loveland when due the moneys payable by virtue of the acceptance of Purchase Order No. 1117.

Peters Metal Products Company

by_____

Fred Peters"

There is also a finding of fact that when Neville took the foregoing assignment to Peters for the latter's signature, Neville advised Peters "that he (Neville) did not intend to make or deliver the assignment, but if it was made and delivered the defendant Peters, would be notified of said execution and delivery, and Peters could then pay any money due under the Purchase Order to plaintiff ;. at the time Peters signed the document . . . , it was not then signed by Neville, nor was it signed by Neville in Peters' presence." Thereafter, the trial court found, Neville "returned said document to plaintiff, receiving from plaintiff a check for $500.00" and executed a promissory note to plaintiff for such loan. Other loans were made by plaintiff to Neville as follows: April 22, 1946, $200; April 27, 1946, $500; represented by a promissory note. The court also found that "On February 14, 1946, when plaintiff loaned $500.00 to Neville, it was understood . . . that Neville would repay (this amount) to plaintiff out of the first monies collected under Purchase Order No. 1117."

The defendants were found to have paid Neville $1,221.81, the amount then due on the said purchase order, on May 21,

1946; on May 22, 1946, Neville paid plaintiff the $500 borrowed on February 14 and for which amount the alleged assignment had been given as security. "On June 5, 1946, defendants again paid Neville $500.00 . . . and on June 21, 1946 paid the balance due under said Purchase Order," less an adjustment made for defective castings. After these payments had been made by defendants to Neville, according to the findings, "On July 20, 1946 plaintiff wrote defendants a letter advising that he held an assignment dated February 14, 1946 to all monies to become due Neville under said Purchase Order No. 1117 and making demand for payment of $3,854.78; that this was the first notice plaintiff ever gave to the defendants . . . that he was the owner of said assignment, or that said assignment had been made." On July 26, 1946, Neville filed a bankruptcy petition, in which proceeding plaintiff filed a claim for the amount mentioned above.

Directing judgment dismissing plaintiff's amended complaint, the trial court concluded "That the document dated February 14th, 1946 had not become effective as an assignment at the time it was signed by defendant Peters and his signing of the same is at most notice of an intended assignment; that defendants having paid in full all monies due under said Purchase Order No. 1117 before notice to them by plaintiff that he was the owner of said assignment, constitutes a good defense against the plaintiff's present claim." A further conclusion of law was "That said assignment having been given as security for a loan of $500.00, the same constitutes, not an assignment, but a pledge for a loan which was paid in full and released the assignment as security."

It is appellant's contention that "Peters' Agreement to pay appellant all moneys due under Purchase Order No. 1117 assented to by Neville created a new contract under which respondents became directly liable to appellant"; that this direct obligation to pay appellant Loveland "could not be satisfied by payment to or settlement with, Neville." The appellant argues that "under the doctrine of constructive notice (respondents were) chargeable with notice of assignment to appellant prior to payment to assignor"; also that the assignment "had been accomplished orally and by manual delivery of the purchase order at the time respondent Peters executed the assignment instrument." It is further insisted that "Respondents are estopped from asserting any invalidity in the new contract under which respondents (became) directly liable to pay appellant or from denying valid

notice of the assignment.'' The appellant also complains that the trial court committed reversible error in failing to find upon the issue of constructive notice; that the findings made are unsupported by any substantial evidence, and are contrary to both evidence and law.

Appellant's contention that by Peters' written acceptance of the alleged assignment to Loveland, a novation resulted making Peters directly liable to Loveland, is predicated upon the holding in *H. D. Roosen Co.* v. *Pacific Radio Pub. Co.*, 123 Cal.App. 525, 531 [11 P.2d 873], that ''Acceptance of a draft or order, whether negotiable or not, by one from whom moneys are to become payable, is not a collateral, but an original, direct and immediate contract between the acceptor and the payee''; that ''Such contract constitutes a novation.'' As stated in respondents' brief, there is no quarrel with the rule of law there laid down, but ''A careful analysis of that case shows that the facts therein were entirely different from the facts of the case at bar.'' In this connection the respondent refers to *C. I. T. Corp.* v. *Glennan*, 137 Cal.App. 636, 638 [31 P.2d 430], holding that ''A notice of intended assignment is not notice of a subsequent assignment.'' The latter case also observes that ''The duty to protect one's interest does not alone devolve upon the maker of a non-negotiable instrument, but an assignee, in order to protect himself, cannot remain silent.''

It appears from the record herein, as respondents' brief points out, that ''Both respondent Peters and Neville testified that when the document was presented to respondent it had not been signed by Neville,'' the alleged assignor. Peters testified on several different occasions that when the document was brought for signature, Neville ''stated that he might never have to use that, and if he did, he would notify me.'' The reason for the transaction, as stated by Neville to Peters, was that a ''certain party, Pistell, . . . was bringing suit against him, and . . . the reason for this (assignment) was only a protection so that it wouldn't tie up his plant and his partners.'' Neville also stated, according to Peters, ''that in case that suit materialized and certain things would have to be attached . . . that then he would notify me and the money could be paid to Mr. Loveland, his partner, who in turn would refund him the money so he could operate.''

Under this view of the evidence, accepted by the trial court, the alleged assignment and Peters' written acceptance thereof constituted no more than collateral ''security for a loan of

$500.00,'' which loan, as found by the trial judge, ''was paid in full on or about May 22nd, 1946; that no notice of said assignment as collateral, or otherwise, was given to defendants until after defendants had paid (Neville) in full all monies due under said Purchase Order No. 1117.'' In this connection it will be recalled that appellant did not give said notice until July 20, 1946, six days before Neville filed a petition in bankruptcy; also that in the Neville bankruptcy proceedings appellant filed a claim for the same amount demanded from Peters. The practical effect of the present action is that Peters is asked to pay twice for the castings manufactured by Neville under the purchase order in question. Under the circumstances disclosed by the record there is no merit in appellant's claim.

The appellant's other contentions are likewise untenable. Neither the doctrine of constructive notice nor that of estoppel will suffice to justify a reversal under the evidence here presented. While it is true that a certain amount of conflict appears in the testimony adduced from the various witnesses, the weight to be accorded such evidence, and the credibility of the witnesses which is assailed by appellant, are questions for the determination of the trial court rather than for an appellate tribunal. That there is substantial evidence to support the findings and judgment appealed from, cannot be doubted. No reversible error has been pointed out.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.