[Civ. No. 62853. Second Dist., Div. Four. Nov. 5, 1981.]

WESLEY J. KINDER, as Insurance Commissioner, etc., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; ELDORADO INSURANCE COMPANY et al., Real Parties in Interest.

**COUNSEL**

George Deukmejian, Attorney General, Arthur C. de Goede, Assistant Attorney General, and Edmond B. Mamer, Deputy Attorney General, for Petitioner.

No appearance for Respondent.

Clausen, Harris & Campbell and Kenneth H. Clausen for Real Parties in Interest.

---

OPINION

**FILES, P. J.**—This proceeding raises the question whether the Insurance Commissioner of California (Commissioner), as liquidator of an insolvent workers' compensation carrier, may use general assets of the insolvent to pay benefits to workers who failed to file written claims in the liquidation proceeding in conformity with Insurance Code sections 1021-1024. We have concluded that the claims procedure is not a bar to the payments involved here.

The issue was raised by an application filed by the Commissioner in the superior court seeking an order authorizing the Commissioner to continue to pay workers' compensation to persons who had failed to file claims within the statutory six-month period for filing claims in the liquidation of the Eldorado Insurance Company. The superior court made an order, filed June 11, 1981, denying the application, holding "that payment on such claims as to which there has been no compliance with Insurance Code sections 1021, 1023 and 1024 may not be legally made by applicant."

The Commissioner appealed from that order and concurrently filed in this court a petition for writ of mandate to review the June 11 order. We issued the alternative writ, since it appeared that the slower remedy by appeal was not adequate. This case directly involves approximately 630 workers' compensation claimants, some of whom have claims pending before the Workers' Compensation Appeals Board and some of whom have awards made by the board for disability indemnity, medical care or rehabilitation. Interruption of the payment process has necessarily imposed hardship on these claimants. The Commissioner informs us that a similar problem exists in the insolvencies of two other insurers.

The facts as set forth in the Commissioner's application to the superior court are not in dispute. On August 2, 1978, the Superior Court of Santa Clara County appointed the California Insurance Commissioner conservator of the Eldorado Insurance Company, an insurer who issued workers' compensation insurance policies.

When it was determined that rehabilitation was impossible, on December 11, 1978, the court ordered that Eldorado be liquidated and appointed the Commissioner as liquidator.

Pursuant to Insurance Code sections 1021 and 1022, notice to creditors was published in newspapers of general circulation.[1] The six-month period allowed by section 1021 for filing claims ended June 20, 1979.

On December 4, 1979, pursuant to Insurance Code section 1040, the case was transferred to Los Angeles County.

Following the decision to liquidate, the Commissioner turned over certain assets of the insolvent carrier to the California Insurance Guarantee Association, commonly called CIGA, which is an involuntary association of insurance companies created by statute. (Ins. Code, § 1063 et seq.) Its function is to adjust and pay certain statutorily defined "covered claims" of the insolvent, using, as needed, money raised by assessing its members. Under the statutory definition, an obligation of the insolvent insurer is not a "covered claim" unless it has been presented to the liquidator or to CIGA within the six-month period. (§ 1063.1, subd. (c).) CIGA has assumed responsibility for paying the workers' compensation benefits owed to persons who filed claims within that six-month period. But CIGA has taken the position that it is not liable for pay-

---

[1]Insurance Code section 1021, subdivision (a): "Upon the making of an order to liquidate the business of such person, the commissioner shall cause to be published notice to its policyholders, creditors, shareholders, and all other persons interested in its assets. Such notice shall require claimants to file their claims with the commissioner, together with proper proofs thereof, within six months after the date of first publication of such notice, in the manner specified in this article."

Insurance Code section 1022: "Such notice shall be published in a newspaper of general circulation, published in the county in which the proceeding is pending, not less than once a week for four successive weeks. A copy of the notice, accompanied by an affidavit of due publication, including a statement of the date of first publication, shall be filed with the clerk of the court."

Insurance Code section 1024: "Unless such claim is filed in the manner and within the time provided in section 1021, it shall not be entitled to filing or allowance, and no action may be maintained thereon. In the liquidation, pursuant to the provisions of this article, of any domestic insurer which has issued policies insuring the lives of persons, the commissioner shall, within thirty days after the last day set for the filing of claims, make a list of the persons who have not filed proofs of claim with him and to whom, according to the books of said insurer, there are amounts owing under such policies, and he shall set opposite the name of each person the amount so owing to such person. Each person whose name shall appear upon said list shall be deemed to have duly filed, prior to the last day set for the filing of claims, a claim for the amount set opposite his name on said list."

ment of benefits to disabled workers who failed to file timely formal claims.

The Commissioner presently holds approximately $4.8 million in general assets of Eldorado, the insolvent carrier, which the Commissioner desires to use to pay workers' compensation benefits owed to those workers who failed to file timely claims with the Commissioner. CIGA is justifiably opposing the Commissioner's application because it would affect the amount available to CIGA from the insolvent carrier's general assets.

■ The Commissioner's case rests upon his interpretation of *In re Interstate Indem. Co.* (1963) 219 Cal.App.2d 809 [33 Cal.Rptr. 418]. That case decided a question of the priority of workers' compensation obligations over other indebtedness of an insolvent carrier. No claims statute was involved. Hence the *Interstate Indemnity* opinion did not decide the issue which is pending here. Nevertheless the reasoning of the Court of Appeal in *Interstate Indemnity* establishes a foundation for the decision here.

The *Interstate Indemnity* case arose at a time before there was any CIGA to assume the obligations of a defunct carrier. When Interstate Indemnity became insolvent, a group of insurance companies writing workers' compensation insurance entered into a reinsurance and assumption agreement with the Commissioner to provide payment of the liabilities of Interstate under the workers' compensation policies it had issued. When the reinsurers had paid the workers' compensation claims, and the Commissioner was proceeding to liquidate Interstate, the reinsurers filed their claim for reimbursement out of the assets held by the Commissioner as liquidator. The question before the court was whether the reinsurers were entitled to priority over other creditors of the insolvent Interstate.

The appellate court held that the reinsurers had "preferred liens" on the assets in the hands of the Commissioner and therefore were entitled to reimbursement ahead of general creditors. This conclusion was based upon the court's interpretation of Labor Code section 4908 and Code of Civil Procedure section 1204, as it read in 1958.[2]

---

[2]Labor Code section 4908: "A claim for compensation for the injury or death of any employee, or any award or judgment entered thereon, has the same preference over the other debts of the employer, or his estate and of the insurer which is given by the law

The reasoning of the Court of Appeal in *Interstate* is reflected in the following passage (at pp. 815-816): "Section 4908 of the Labor Code gives workmen's compensation claims the same preference over the other debts of the employer, or his estate and of the insurer which is given by the law to claims for wages. The section extends such preference to the entire amount of the compensation to be paid, unlike the preference accorded claims for wages which extend only to wages earned in the 90-day period of employment prior to insolvency.

"The preferential nature of a wage claim is established by the provisions of section 1204 of the Code of Civil Procedure. The section applies to 'any proceeding in insolvency or receivership.' Further, the second paragraph of the section expressly binds all the courts of this state and provides that in all receivership actions the court must order the receiver to pay such preferred labor claims promptly out of the *first* receipts of the receivership. The conservator acts as a statutory receiver. (*Caminetti v. Guaranty Union Life Ins. Co.*, 22 Cal.2d 759 [141 P.2d 423].)

"Thus, regardless of any agreement between the conservator and appellant, workmen's compensation claims enjoy preferred status as against the claims of other creditors. By entering into an agreement with appellant, the Commissioner found a way, commendably, for the prompt payment of the claims of injured workmen. In doing so, however, he could not relieve the assets of Interstate from being impressed with the preferred liens of such claimants.

---

to claims for wages. Such preference is for the entire amount of the compensation to be paid. This section shall not impair the lien of any previous award."

Former Code of Civil Procedure section 1204: "When any assignment, whether voluntary or involuntary, and whether formal or informal, is made for the benefit of creditors of the assignor, or results from any proceeding in insolvency or receivership commenced against him, or when any property is turned·over to the creditors of a person, firm, association or corporation, or to a receiver or trustee for the benefit of creditors, the wages and salaries of miners, mechanics, salesmen, servants, clerks, laborers, and other persons, for personal services rendered such assignor, person, firm, association or corporation, with 90 days prior to such assignment, or the taking over of such property, or to the commencement of the proceeding when a court action is involved, and not exceeding six hundred dollars ($600) each, constitute preferred claims and liens as between creditors of the debtor, and must be paid by the trustee, assignee or receiver before the claim of any other creditor of the assignor, insolvent, or debtor whose property is so turned over, and must be paid as soon as the money with which to pay same·becomes available. ...

"This section is binding upon all the courts of this State and in all receivership actions the court must order the receiver to pay promptly out of the first receipts and earnings of the receivership, after paying the current operating expenses, such preferred labor claims and such liens." (Stats. 1951, ch. 476, § 1, p. 1613.)

"The conservator and liquidator, as successor to the obligations of Interstate, remained obligated to the workmen's compensation claimants under the compensation policies issued by Interstate, and any funds accruing to the account of Interstate were chargeable with such preferred claims."

The statement of the court that the assets of Interstate were "impressed with the preferred liens of such [workers' compensation] claimants" was derived from the language "preferred claims and liens" in Code of Civil Procedure section 1204.

It follows from the reasoning of the *Interstate* court that under the law then existing, workers' compensation claims were liens upon the assets of the insolvent insurer.

"A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act." (Civ. Code, § 2872.)

■ As a general proposition, a secured creditor need not file a claim to preserve the benefit of his security. (See *Clem* v. *Johnson* (8th Cir. 1950) 185 F.2d 1011, 1012; Prob. Code, § 716, subd. (b); 3 Collier on Bankruptcy (15th ed. 1981) ¶ 506.07.)

■ It is upon this analysis that the Commissioner, since the *Interstate Indemnity* decision of 1963, has assumed that an injured worker was not required to file a claim to preserve his right to payment out of the assets of an insolvent compensation insurance carrier. Upon this assumption, prior to the superior court proceedings described above, the Commissioner was making payments to disabled workers who had been awarded compensation by the Workers' Compensation Appeals Board but who had not filed the formal claims called for by Insurance Code section 1021.

■ The interpretation of a law by the official charged with its administration is entitled to great weight. (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 756 [151 P.2d 233, 155 A.L.R. 405].) ■ In this instance the Commissioner's interpretation is supported by the reasoning of the Court of Appeal in the *Interstate* case. We therefore conclude that Code of Civil Procedure section 1204, read together with Labor Code section 4908, gave workers' compensation

claims a lien status which was not forfeited by failure of the claimants to file a formal claim under Insurance Code sections 1021-1024.

In 1979 the Legislature revised Code of Civil Procedure, section 1204, omitting the word "liens." This amendment, operative October 1, 1979, was one of several modifications of the code which were enacted to harmonize California law with the new Federal Bankruptcy Reform Act with respect to priorities, exemptions and the recovery of preferences. (Stats. 1979, ch. 394, §§ 3, 8.)

The amendment did not change the preexisting rule that wage claims had priority over all other obligations of the debtor, nor was there any change in Labor Code section 4908.

In view of this amendment we must look for the date when the liens came into being.

Insurance Code section 1019 provides: "Upon the issuance of an order of liquidation under section 1016, the rights and liabilities of any such person and of creditors, policyholders, shareholders and members, and all other persons interested in its assets, including the State of California, shall, unless otherwise directed by the court, be fixed as of the date of the entry of the order in the office of the clerk of the county wherein the application was made."

Inasmuch as the rights of persons entitled to share in the assets of Eldorado were fixed as of the date of the liquidation order, December 11, 1978, those rights were not diminished by the amendment to Code of Civil Procedure section 1204 which did not become operative until October 1, 1979. We cannot read such an amendment as invalidating liens which were already in existence. It is thus unnecessary for us to decide in this case whether the 1979 legislation was intended to or did have the effect of subjecting disabled workers to the claims procedure of the Insurance Code in some future liquidation of an insolvent carrier. The workers' compensation creditors whose rights were fixed on December 11, 1978, by operation of Insurance Code section 1019, were not subject to that requirement.

Let a peremptory writ of mandate issue requiring the respondent court to vacate its order of June 11, 1981, in the proceeding entitled Insurance Commissioner of California v. Eldorado Insurance Company,

No. C 306277, and make a new order granting the application filed by the Commissioner on April 24, 1981.

Kingsley, J., and Woods, J., concurred.