[Civ. Nos. 27739, 27740. Second Dist., Div. Four. Sept. 16, 1964.]

F. BRITTON McCONNELL, as Insurance Commissioner, Plaintiff and Appellant, v. ALL-COVERAGE INSURANCE EXCHANGE AUTOMOBILE AND FIRE et al., Defendants and Respondents.

(Two Cases.)

736

Stanley Mosk and Thomas C. Lynch, Attorneys General, and Arthur C. de Goede, Deputy Attorney General, for Plaintiff and Appellant.

Neil Cunningham, Wright, Wright, Goldwater & Mack, Loyd Wright, Edgard R. Carver, Jr., and Rodney R. Buck for Defendants and Respondents.

KINGSLEY, J.—Appeals have been taken by the Insurance Commissioner from two separate orders of the superior court awarding attorneys' fees, auditors' fees and advances against

costs pending a hearing on the merits of a conservatorship proceeding initiated by the commissioner pursuant to section 1011 of the Insurance Code.[1]  By stipulation of counsel and permission of this court, both appeals have been consolidated for briefing and decision.

All-Coverage Insurance Exchange Automobile and Fire is an organization composed of persons who exchange reciprocal insurance contracts with each other.  All-Coverage Underwriters, Inc., has been the attorney-in-fact for the Exchange whereby it solicits and processes applications for the exchange of insurance contracts for the subscribers of the Exchange, and receives and collects for and in the name of the Exchange all premiums for insurance and membership fees.

On November 21, 1962, the commissioner, pursuant to section 1011, filed with the court below his verified "Application for Order Appointing Conservator." The application alleged that an examination of the affairs of the respondents had been made, and that sundry conditions had been found to exist as grounds for conservatorship.  The application also requested that the commissioner be allowed to take possession of all property and assets of respondents, and to conduct so much of the business as the commissioner might deem appropriate.  An order to this effect was granted on November 21, 1962.[2]

On January 7, 1963, respondents filed their verified answer to the commissioner's application for order appointing conservator.  The answer also embodied a petition, pursuant to section 1012, for termination of the order appointing conservator.  On January 10, 1963, respondents obtained an order to show cause directed to the commissioner why allowance of attorneys' fees and costs on account should not be granted.  Concurrently filed with the order to show cause was an application for an order directing the commissioner to release to respondents a reasonable amount for attorneys' fees and costs in connection with the preparation for hearing of the petition to terminate the order of conservatorship.

The order to show cause came on for hearing on January 29, 1963, and the court, on March 1, 1963, made its order allowing counsel for respondents attorneys' fees on account

---

[1]Unless otherwise indicated all references are to the Insurance Code.

[2]Upon the filing of such a verified petition the superior court is required to issue such an order. (See *Financial Indem. Co.* v. *Superior Court* (1955) 45 Cal.2d 395 [289 P.2d 233].)

as follows: $2,500 from the funds of the Exchange and $2,500 from the attorney-in-fact. The order also recites the receiving into evidence of 21 different documents, affidavits and declarations, exclusive of points and authorities, plus the testimony of counsel for respondents, and found that the retention of counsel by respondents was made in good faith and was necessary for the assertion and adjudication of respondents' rights. The order further stated that the employment of the auditors, Joseph Froggatt & Co., Inc., was made in good faith and was reasonably necessary.

On April 4, 1963, respondents filed a motion for an order directing the commissioner to pay out of the assets of respondents, reasonable sums for the Froggatt audit, for costs and expenses, and for additional attorneys' fees. On April 11, 1963, the court following a hearing on April 9, 1963, made its order allowing counsel for respondents the sum of $2,500 on account of costs theretofore incurred, and allowing Joseph Froggatt & Co., Inc., the sum of $3,843.60 for the reasonable value of its services theretofore rendered, finding that such services were rendered in good faith and were reasonably necessary to enable respondents to defend themselves. The court also retained jurisdiction to make such additional allowances as the court might later find reasonably necessary for respondents' defense.

I

It is the commissioner's primary contention that the superior court lacked all jurisdiction to award respondents attorneys' fees, expenses or costs from the assets of the respondent Exchange or attorney-in-fact in a conservatorship proceeding of this nature. The commissioner places strong emphasis upon the fact that the conservatorship proceeding instituted under section 1011 is a special proceeding, the court having only those powers which are expressly granted to it by statute (*Caminetti* v. *Imperial Mut. Life Ins. Co.* (1943) 59 Cal.App.2d 476, 492 [39 P.2d 681]), and since a comprehensive statutory scheme for handling the affairs of delinquent insurers has been set forth in sections 1010-1062, which do not provide for attorneys' fees or costs of suit, the logical conclusion is that the court below was wholly without jurisdiction to make such an award.

The commissioner further argues that, because of the nature of the insurance business and the vital public interest therein, the legislative determination of the necessity of prompt, efficient, and economical administration of the estates of de-

linquent insurers makes it apparent that the Legislature did not intend to permit the depletion of the assets available for creditors and for the indemnification of insureds by the payment of fees to counsel for services rendered in resisting the conservatorship. While the commissioner's arguments are persuasive, such is not the law in California.

The argument that the court is without jurisdiction to grant attorneys' fees in a conservatorship of an alleged delinquent insurance company was advanced by the commissioner in *Anderson* v. *Great Republic Life Ins. Co.* (1940) 41 Cal.App.2d 181 [106 P.2d 75]. Although the *Anderson* opinion was rendered after the passage of the present Insurance Code in 1935, the case itself was initiated under the prior 1931 act. However, we believe that *Anderson* is controlling as to the issue presented here. ██ As was pointed out in the *Anderson* case, the initiation of conservatorship proceedings under the old act or under the present code is exactly the same. The following quotation from *Anderson* (pp. 187-188) more fully sets forth this point:

"The proceeding against the insurance company was instituted under the provisions of the act of the legislature entitled 'An Act to Provide for Proceedings against and Liquidation of Delinquent Insurance Corporations and Associations,' (Stats. 1919, p. 265; amended 1921, p. 1017; 1931, p. 2375; Act 3739, Deering's Gen. Laws, 1931), which act was supplanted in 1935 by the applicable sections of the Insurance Code. (§§ 1010-1061, art. 14, ch. 1, pt. 2, div. 1.) Such a proceeding is so instituted by the insurance commission [*sic*] as an officer of the state acting in the public interest. [Citations.] *The Insurance Commissioner's status in this respect was clearly the same under the former act as under the present code. However, it is to be noted that in either case the duties of the commissioner as conservator are in the nature of those of a receiver or trustee. Both the former act and the code expressly so provide.* (Deering's Gen. Laws, 1931, Act 3739, §§ 6 and 10; Ins. Code, § 1057.) . . .

"As far as the question here presented is concerned [the jurisdiction of the court to grant attorneys' fees in a conservatorship proceeding] *it makes little difference whether the proceeding was governed by the new law or the old, . . .*" (Italics added.)

In reaching its conclusion that the court, in a conservatorship proceeding, had jurisdiction to award attorneys' fees,

the above noted decision (at pp. 188, 189, 190, 191, and 193) analyzed the problem as follows:

"There is no express statutory provision for the allowance of fees for the attorneys of a delinquent insurance company in a proceeding of this nature. However, appellants concede that there are some instances in which attorney's fees are allowed by courts of equity in the absence of a contract and in the absence of a statute authorizing such allowance, but argue also that a proceeding of this kind instituted by the Insurance Commissioner is a special proceeding of a statutory nature and that the jurisdiction of the court is limited by the provisions of the statute governing the proceeding. There can be no doubt as to the validity of such contention, but as pointed out above, under the act by which the said proceeding was instituted the Insurance Commissioner became a receiver of the assets of the delinquent insurance company with the powers and duties of such receivers within this state. . . . There is nothing in the act to indicate that the jurisdiction of the court over the commissioner in the exercise of his duties and powers are any different from the jurisdiction ordinarily exercised over receivers of corporations generally. There is but one exception to be noted, namely, that the court is without power to appoint a receiver, the Insurance Commissioner taking over that office under the act by virtue of his authority as an officer of the state. It is clear that once the duties are thus assumed the commissioner is subject to the jurisdiction of the court to the same extent generally as are all receivers of corporations. . . .

"Appellants also argue in effect that because the said proceeding is an exercise of the police power of the state the liquidation proceeding therefore differs radically from an ordinary receivership proceeding. Police power can never be used as an excuse for unreasonable, arbitrary action or improper discrimination. See *Carpenter* v. *Pacific Mut. Life Ins. Co., supra,* at page 329 [10 Cal.2d 307 (74 P.2d 761)], for an application of the principles involved under the present Insurance Code. Nor does the fact that the statute under certain circumstances permits the summary seizure of the property of a delinquent insurance company, alter the relationship of the commissioner as a receiver once he has assumed control of the assets.

". . . . . . . . . . . .

"Since the act here in question constitutes the Insurance

Commissioner a receiver of the delinquent insurance company with the powers and duties of receivers of corporations in this state, whether the insurance company should be allowed attorney's fees in defending itself in the proceeding presents a question no different in effect than if raised in connection with corporate receiverships generally. Neither party has cited any California authority in point and a search fails to reveal a California case on the question. However, there appears to be nothing in California law, statutory or otherwise, which precludes an application of the rule laid down in *Barnes* v. *Newcomb, supra* [89 N.Y. 108], and enunciated in *Watson* v. *Johnson,* 174 Wash. 12 [24 P.2d 592, 89 A.L.R. 1527], the latter cited by respondent. That rule may be summarized as follows:

"It is a general rule that where an application has been made for the appointment of a receiver for a corporation, attorneys' fees and expenses in resisting such application, if made in good faith and upon reasonable grounds, may become a valid claim against the receiver. Whether such attorneys' fees and expenses are to be allowed rests in the sound discretion of the court, in view of all the facts and circumstances, (Note 89 A.L.R. 1531). If allowed, the question as to the amount thereof is likewise addressed to the sound discretion of the court. The claim of the officers of a corporation or of attorneys employed by them to be paid out of the funds in the hands of the receiver is not an absolute right, but it is entirely in the discretion of the court administering the fund to determine, first, the good faith and justification for such application, and second, if warranted, the amount to be allowed. (*Esarey* v. *Pierson,* 84 Ind.App. 109 [141 N.E. 87].) 'Even if it turns out that a case is made for the interference of the state, so long as the defense was made in good faith and upon reasonable grounds, there is apparent justice in subjecting the property and fund involved in the litigation to expenses incurred in discharging a general duty cast upon the corporation as its trustees, to take all reasonable means for its protection.'

". . . . . . . . . .

"One of the arguments advanced by appellants should not go unnoticed, because of the implication therein. Appellants argue that since respondent was employed after the insurance company had been restrained from transacting any business or disposing of any of the assets and since the commissioner was appointed conservator of the insurance company shortly after

respondent was so employed, the insurance company lacked the capacity to contract and it likewise lacked the capacity to impose a lien or charge upon the assets in the custody of the conservator by authorizing an attorney to render services to it. If such an argument were valid, the result would be obvious. An insurance company proceeded against by the commissioner would be hamstrung in any effort to defend itself, the hands of its directors would be tied and there would be no effective recourse from unwarranted official action. If this were the case the effect would be to deny the company the right to counsel and hence to due process of law. Since in such a proceeding as this all the funds of the corporation are placed in the hands of the conservator, an arbitrary denial to the corporation of the use of any portion of such funds to pay attorneys' fees amounts to the same thing as a denial of the right to contract for the services of an attorney, the effect of which would be a denial of the right to defend at all."

The commissioner, in answer to the *Anderson* analysis above set forth, contends that in conservatorship proceedings of this nature, unlike receivership cases, the court does not have the funds of the corporation in its custody through its own officer, a receiver, and, therefore, it is not free to distribute such funds in accordance with general principles of equity. And since the funds of the corporation are in the hands of a state officer, these assets are distributable only in accordance with the terms of the statute.

In answer to this further contention we need only refer to the *Anderson* case (p. 189) where it was noted that section 1057, in providing that the commissioner is a trustee, indicates that his duties are in the nature of those of a receiver.

To hold that the court lacked jurisdiction to make orders such as are before us would be to countenance a de facto deprivation of property without due process of law. While the nature of the insurance business justifies the preliminary interposition of a conservator on an ex parte application, respondents cannot validly be deprived permanently of their property and of their control over it without a full-dress judicial hearing on the merits of the commissioner's allegations. But such a hearing necessarily implies the assistance of counsel and the expenditure of funds in preparation of a defense. The commissioner cannot, by seizure of respondents' funds before the hearing, create a practical impossibility

of any effective contest of his administrative findings and allegations. Totally to deny respondents access to any corporate funds thus would render the entire scheme invalid. ▮ The Legislature cannot be presumed to have intended an unconstitutional procedure and the absence of any provision for orders for counsel fees and costs from the particular statute involved must be deemed to evidence an intent to resort to the provisions of general law applicable to all kinds and varieties of receivership, statutory or otherwise. (*Anderson* v. *Great Republic Life Ins. Co.*, *supra* (1940) 41 Cal. App.2d 181, 193; cf. *Pratt* v. *Robert S. Odell & Co.* (1942) 49 Cal.App.2d 550, 563 [122 P.2d 684].)

## II

▮ The commissioner's second contention is that, assuming *arguendo* that the court had jurisdiction to award respondents attorneys' fees, costs and expenses, the court abused its discretion because there was no showing by respondents that their application was made in good faith and upon grounds. (See *Anderson* v. *Great Republic Life Ins. Co.*, *supra* (1940) 41 Cal.App.2d 181, 186.)

There is no merit to this contention. The evidence of good faith and reasonable grounds was substantial. It consisted of the verified answer to the application for conservatorship and the petition to terminate the conservatorship. In the course of the hearing on January 29, 1963, Mr. Neil Cunningham, one of the attorneys for respondents, testified that he specialized in insurance law, particularly that pertaining to regulatory licensing; that he had been retained by respondents on January 2, 1963; that he had personally conducted an investigation into the matters raised by the application for conservatorship and that he had an opinion as to whether or not there was a reasonable defense as to the matters set forth in such application. It was Mr. Cunningham's opinion, as an expert in insurance law, that respondents had a perfectly valid defense, and that it was also his opinion that such defense was being taken in good faith.

The affidavit of Loyd Wright, of the firm of Wright, Wright, Goldwater and Mack, discloses, among other things, that his firm had been retained by respondents, and that various members of his firm had spent a great many hours in research, investigation of the affairs of respondents, and upon such investigation had advised respondents that they had a valid defense against the continuance of the conservatorship.

Upon this status of the record the trial court did not abuse

its discretion in awarding respondents attorneys' fees, costs and expenses. The proceeding below, at this stage, did not require a judicial determination upon the merits, but merely a prima facie showing of reasonable grounds to defend.

At the hearing of this appeal, the commissioner sought to augment the record by including the opinion, findings of fact and conclusions of law and order made by the trial court after the hearing on the merits of the commissioner's petition and respondents' petition to terminate the conservatorship. The commissioner argues that, because his position was ultimately sustained, the defense was not made in good faith. The argument is not persuasive. The orders herein under review must be judged on the facts before the trial court when they were made. As we have pointed out, at that time, and on the facts then before the court, its finding of good faith was supported by the record; that further inquiry, after a full hearing, has shown (if it has)[3] that the commissioner was right and respondents wrong falls far short of proving that an attempt to defend was made in bad faith, even less does it prove that the trial court's preliminary estimate of bona fides was an abuse of discretion. The request to augment the record by the inclusion of subsequent proceedings must be denied.

### III

The commissioner further contends that, since there are no findings of fact relative to the issue of whether respondents' petition to terminate the conservatorship and request for attorneys' fees was made in good faith and upon reasonable grounds, there has been a failure to find upon a material issue requiring a reversal of the court's order, citing *Hicks* v. *Barnes* (1952) 109 Cal.App.2d 859, 862 [241 P.2d 648]; and 2 Witkin, California Procedure, page 1849.

However, proceedings under section 1010 et seq. are considered *special proceedings* and no findings of fact are necessary. (*Carpenter* v. *Pacific Mut. Life Ins. Co.* (1937) 10 Cal.2d 307, 327-328 [74 P.2d 761].) Furthermore, the order of March 1, 1963, recites the following, to wit:

"Points and Authorities having been filed, argument having been heard, and all thereof considered by the Court, and the cause having been submitted to the Court for its decision and it being advised in the premises and having found:

---

[3]The final order is not before us for review and, of course, we imply no opinion as to its correctness.

that the defense by each of said Respondents against and the retaining by each of Counsel to represent them in such defense against said 'APPLICATION FOR ORDERING CONSERVATOR' is in good faith and necessary for the assertion and adjudication of the rights of Respondents, and that the employment by Respondents of Joseph Froggatt & Co., Inc., for the purposes as hereinafter set forth is in good faith and reasonably necessary to enable Respondents to defend against said Application, . . .''

From the foregoing, it is apparent that, even if we adopt the commissioner's contention that findings of fact relative to the issue of respondents' good faith in resisting the application for ordering conservator were necessary, the order itself contains a sufficient finding in this regard to uphold the trial court's decision.

## IV

The commissioner also contends that the trial court abused its discretion in awarding attorneys' fees, costs and expenses since the evidence established that the attorneys were representing the officers in their personal and not in their representative capacity. While it is true that the evidence on this point is somewhat in conflict, there is substantial evidence to support the trial court's implied finding that the attorneys were representing the officers in their representative capacity.

## V

█ Next, it is the commissioner's contention that the trial court abused its discretion in awarding respondents attorneys' fees, costs and expenses where there was no showing by the major shareholders of the respondents that they were without funds with which to oppose the appointment of him as conservator. (See *Lebanon Woolen Mills, Inc.* v. *United States* (1st Cir. 1962) 311 F.2d 364.)

While it is true that no showing had been made by the respondents' shareholders that they did not have sufficient funds to defend the conservatorship proceeding, we do not believe that this bars the court from awarding attorneys' fees, costs and expenses to respondents. █ As was pointed out in the *Anderson* case, *supra* (at p. 191) such an award is not an absolute right, but is entirely in the discretion of the court who must determine the good faith and justification of such an award, and if warranted, the amount to be allowed.

The commissioner's argument overlooks two important factors. In the first place, the creditors and policyholders involved extended credit and paid premiums on the strength

of their estimate of the judgment of that very management which the commissioner now seeks to replace, and not on that of the commissioner. ■ It is only if management's judgment and conduct fails to measure up to the minimum standards prescribed by the code that the state may, under the aegis of protection, impose on the creditors and policyholders a management which they have neither selected nor approved. It follows that, in making what has been found to be a bona fide defense to the state's intervention into their business, the officers and directors of respondents are seeking to protect the trust originally reposed in them.

"The principle upon which an allowance is made is that counsel fees and costs of litigation are in the nature of expenses incurred by the corporation and its directors in the protection and preservation of the trust which they represent; and, even if it turns out that a case is made for interference by the appointment of a receiver and the dissolution of a corporation, so long as the defense was made in good faith and upon reasonable grounds, *there is apparent justification in subjecting the property and the fund involved in the litigation to the expenses incurred in discharging a general duty cast upon the corporation and its directors to take all reasonable means for its protection.* [Citations.]" (Italics added.) (*Watson* v. *Johnson* (1933) 174 Wash. 12, 16 [24 P.2d 592]; see also 89 A.L.R. 1531.)

■ In the second place, the officers, directors and stockholders of an insurance company cannot arbitrarily be required to devote additional assets in order to protect those already devoted to that business. As we have pointed out above, the state cannot constitutionally take possession of assets and thus deprive the owner of power to secure a judicial order for their return. ■ Nor do we think that the state can insist, as a matter of right, that the security of a legitimate investment in a legitimate business must be subject to the unlitigated *ipse dixit* of a state officer unless the investor is prepared to invest new funds in defense of the first investment. ■ It is a serious enough inroad on the property rights of insurance company stockholders to hold, as in the *Anderson* case, that a judicial tribunal may, in the exercise of its sound discretion, require that all or part of the costs of defense against administrative fiat be paid from the uncommitted resources of the stockholders. But this balancing of the interests concerned in a particular conservatorship must be judicial; it cannot be legislative or administrative.

In the case at bar, the court, after a full hearing on the matter, determined that respondents were acting in good faith and upon reasonable grounds in resisting the conservatorship, and upon such a showing awarded respondents attorneys' fees and costs of litigation. We may not substitute our judgment for that of the trial court in this regard.

## VI

██ Finally, the commissioner argues that, if an award of fees and costs is to be made, it should be made only after the full hearing on the petition to terminate and then only if, by success in resisting the conservatorship, the bona fides of the defense has conclusively been demonstrated. To state this proposition is to refute it. Since an award of fees and costs is discretionary, we have no doubt but that the trial court might have postponed its order until the full hearing on the merits. But that is far different from saying that such a postponement is mandatory. In the first place, as we have pointed out above, a defense may be made in good faith and on reasonable grounds even though it ultimately fails. Secondly, while it is possible that an attorney might be found who would accept the representation of the insurance company on a contingent fee basis, the company cannot constitutionally be required to limit its selection of counsel to those willing to accept such conditional employment; and, of course, even such an employment would still leave the company without funds for the necessary costs of investigation and preparation.

## VII

The commissioner's briefs throughout create the impression that he regards the allegations in his application for a conservatorship as conclusive and as disposing of this proceeding on its merits. ██ However, it is well settled that the commissioner's application under section 1011 is not a judicial ruling that an insurance company in fact is delinquent. (*Financial Indem. Co.* v. *Superior Court* (1955) 45 Cal.2d 395 [289 P.2d 233]; *Caminetti* v. *Imperial Mut. Life Ins. Co.*, *supra* (1943) 59 Cal.App.2d 476.) It was to insure that that essential judicial ruling was intelligently made that the orders appealed from were entered.

## VIII

Appellant also urges that the application for attorneys' fees did not comply with rule 12, subsection 5, of the rules of the trial court, and that the application was uncertain in certain particulars. The points are without merit. The rules

of the trial court are for it to construe and apply. Except where a deviation from such a rule operates to deny a litigant a full and fair hearing, an appellate court is bound by the trial court's construction of its own rule. In this case, the record shows that appellant was afforded a full opportunity to present his evidence and arguments and that he was under no misapprehension as to exactly what the respondents sought and why. This is all that the law requires.

He urges, also, that the documents which he wishes to bring before us by way of augmentation of the record would show that, subsequent to the orders herein involved, the attorneys withdrew from the case. We review the orders as made, on the record then before the trial court. If events occur, subsequent to the issuance of the orders appealed from, which render inequitable or improper the enforcement of such orders, appellant's remedy is by appropriate motion in the trial court after the remand to it. On such a motion, the facts can be fully explored and the equities and counter-equities considered.

The motion to augment the record is denied; the orders appealed from are affirmed.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied October 14, 1964, and the opinion was modified to read as above. Appellant's petition for a hearing by the Supreme Court was denied November 10, 1964. Mosk, J., did not participate therein.